UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,           **MEMORANDUM OF DECISION AND ORDER**

      -against-

                                        04 CV 4492 (DRH)(AKT)

STEVEN RABINOVICI,

                Defendant.
----------------------------------X

**APPEARANCES:**

**U.S. DEPARTMENT OF JUSTICE, TAX DIVISION**
Attorneys for Plaintiff
PO Box 55, Ben Franklin Station
Washington, DC 20044
By:    Bartholomew Cirenza, Esq.

**STEIN RISO MANTEL LLP**
Attorneys for Defendant
405 Lexington Avenue, 42nd Floor
New York, NY 10174
By:    Girard A. Riso, Esq.

**HURLEY, Senior District Judge:**

       On October 19, 2004, the Plaintiff, United States of America (the "Government") commenced this action pursuant to Section 7401 of the Internal Revenue Code (the "Code"), 26 U.S.C. § 7401, to reduce to judgment a trust fund recovery penalty assessed against defendant Steven Rabinovici ("Defendant" or "Rabinovici") pursuant to 26 U.S.C. § 6672 on February 8, 1993. Presently before the Court is Defendant's motion for summary judgment on the ground that the action is barred by the applicable statute of limitations. For the reasons set forth below

the motion is DENIED.

## *BACKGROUND*

This case arises out of a penalty assessed by the Internal Revenue Service ("IRS") against Rabinovici as a responsible officer of Veterinary Reference Laboratories Inc., also known as Intermountain Laboratories (hereinafter "Intermountain"). Pursuant to 26 U.S.C. §§ 3102(a), 3402(a) and 7501(a), employers are required to withhold federal social security and income taxes from their employees' wages and hold these taxes in trust for the Government. The withheld taxes (referred to as trust fund taxes) must be paid to the United States on a quarterly basis. *See* 26 C.F.R. § 31.6011(a)-4. Because the IRS credits employees for the trust fund taxes regardless of whether they are paid over by the employer to the Government, the Code provides that officers and certain specified employees of such employers can be held personally liable for the trust fund taxes if they are not paid when due. *S*ee 26 U.S.C. § 6672 (" Any person required to collect, truthfully account for, and pay over any tax payment imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax . . . shall . . . be liable to a penalty equal to the total amount of the tax . . . .); *Schultz v. United States,* 918 F.2d 164, 165 n.1 (Fed. Cir. 1990). Accordingly, any person required to collect, truthfully account for and pay the trust fund taxes and who willfully fails to do so is personally liable for a penalty (commonly referred to as a Trust Fund Recovery Penalty or "TFRP") in an amount equal to the amount of unpaid taxes.

The following relevant facts are taken from the parties' submissions on the motion and the stipulation of facts contained in the Joint Pre-Trial Order and are uncontested unless noted otherwise.

On December 22, 1989 Animed, Inc. filed a petition under Chapter 11 of the U. S. Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York. At the time of filing Rabinovici was the president of Animed. According to Bankruptcy Schedule A-1, Intermountain owed payroll taxes as of December 31, 1989 totaling $84,619.20.[1]

On March 8, 1990, Intermountain filed a petition under Chapter 11 of the U.S. Bankruptcy Code with the United States District Court for the Eastern District of New York. At the time of filing, Rabinovici was the president of Intermountain. Thereafter, in June 1990, the bankruptcy cases of Animed and Intermountain were consolidated and, shortly thereafter, converted from Chapter 11 to Chapter 7. On July 5, 1990 and October 30, 1990, the Internal Revenue Service filed proofs of claim listing unpaid employment tax liabilities incurred by Intermountain which included the employment tax period ending December 31, 1989 in the amount of $86,038.95.

The IRS advised Rabinovici by letter dated September 9, 1992 that it intended to propose to assess a TFRP against him pursuant to 26 U.S.C. § 6672.[2] On February 8, 1993, the IRS did in fact assess a TFRP against Rabinovici. The Government has not produced the February 8, 1993 notice of assessment. Nor has the government submitted any evidence as to its normal practice concerning the content of a notice of assessment. Thus, it is unknown whether the notice

---

[1]Although not clear in the parties' submissions, it would appear that Intermountain is a wholly owned subsidiary of Animed.

[2]Government Exhibit B is a copy of the September 9, 1992 letter. The letter states that the proposed penalty "equals the total not paid to the government of the employment tax withheld from the corporation's employees . . . ." The letter itself does not include the amount of the proposed penalty or any indication of the period covered. Presumably, that information was included in the Form 2751 referenced in the letter as an attachment. Exhibit B, however, does not include Form 2751.

received by Rabinovici contained a break down of the total assessment as is contained in IRS Form 2749 described below.[3]

According to the IRS, the assessment totaled $1,567,162.07, representing the aggregate unpaid trust fund income and F.I.C.A. taxes withheld from wages paid to Intermountain's employees for the periods ending December 31, 1989 through December 31, 1991. Form 2749 delineates all of the corporate employment tax periods included in the $1,567,162.07. According to that form, the assessment consisted of the following:

| Period ending | Trust Fund Balance |
| --- | --- |
| 12/31/89 | $86,038.95 |
| 3/31/90 | $185,140.39 |
| 6/30/90 | $185,140.39 |
| 9/30/90 | $185,140.39 |
| 12/31/90 | $185,140.39 |
| 3/31/91 | $185,140.39 |
| 6/30/91 | $185,140.39 |
| 9/30/90 | $185,140.39 |
| 12/31/91 | $185,140.39 |
| Total trust fund portion outstanding to be assessed: | $1,567,162.07 |

The record does not indicate whether Rabinovici received a copy of Form 2749. At the time the assessment was made, it was apparently the IRS's standard procedure to make one aggregate assessment when employment tax liabilities for consecutive quarters were not paid over to the Government and to identify the assessment using the last quarter in the series. Accordingly, the assessment against Rabinovici was identified as the December 31, 1991 civil penalty assessment.

---

[3] The Court notes that Defendant's Answer indicates that there was communication between the Government and Defendant about the assessment after the February 8, 1993 notice of assessment was issued. The Answer suggests that the initial assessment of over $1,500,000.00 was reduced by over $1,400,000.00 as a result of those discussions. *See* Answer ¶¶ 1(c) - (g).

Eight of the nine quarters included in the February 8, 1993 assessment, to wit all four quarters of both 1990 and 1991, were periods where Intermountain failed to file quarterly employment returns. For those eight quarters, the IRS prepared substitute returns predicated upon its erroneous belief that Intermountain continued operations though the fourth quarter of 1991. According to the IRS, when this factual assumption proved incorrect as Intermountain had closed operations before the end of 1991,[4] the IRS, in the latter part of 1993, abated the excess amounts. Of the original $1,567,162.07 assessment, $1,481,123.12 was abated, leaving an unabated TFRP of $86, 038.95, which happens to equal the amount of Intermountain's unpaid employment tax liabilities for the period ending December 31,1989. According to the IRS, the abatement was effectuated by first splitting the original aggregate assessment into two parts and reversing the portion to be abated. By splitting the abatement in this manner, the computer automatically reversed all assessed statutory interest liabilities attributable to the portion of the aggregate assessment abated.

Rabinovici, on the other hand, argues that the IRS' computer records refer to an original assessment on February 8, 1993 in the amount of $86,038.95 relating to the December 1989 tax liability and an additional assessment in the amount of $1,481,123.12 for the tax periods 1990 and 1991.

By notice dated January 29, 2001, the IRS issued to Rabinovici a "Final Notice - Notice of Intent to Levy and Notice of Your Right to A Hearing" (the "Levy Notice"). The Levy Notice

---

[4] According to the Government, Intermountain ceased all operations on July 12, 1990 when the consolidated bankruptcy cases were converted to Chapter 7.

referred to two separate tax liabilities, a "CIVPEN for the "Tax Period" ended December 31, 1991, an apparent reference to the civil penalty under Section 6672 of the Code, and a "1040" for the "Tax Period" ended December 31, 1997. The "1040" is not at issue here. The Levy Notice stated:

| Form Number | Tax Period | Unpaid Amount from Prior Notices | Additional Penalty & Interest | Amount You Owe |
|---|---|---|---|---|
| CIVPEN | 12/31/91 | 84731.55 | 77169.62 | 161901.17 |
| 1040 | 12/31/97 | 98505.46 | 13159.92 | 111665.38 |
| | | | Total: | 273566.55 |

By cover letter dated February 14, 2001 Rabinovici's tax representative submitted on his behalf "Form 12153," a Request for a Collection Due Process Hearing challenging the Levy Notice. The request was received by the IRS on February 27, 2001. The request states:

> The Taxpayer disagrees with the Notice of Intent to Levy dated January 29, 2001. The Taxpayer believes that the liability is not a correct amount. The Taxpayer is not a responsible person liable for a civil penalty for the year 1991. We have filed a freedom of information act request to obtain information regarding this matter, but have not received such information. The taxpayer requests a hearing wherein, he may be able to provide information to correct this liability. This amount does not correspond with his records as the accurate tax liability for the years in question.

On or about October 10, 2002, the IRS issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the "Determination") sustaining the levy. The Determination contains the following "Brief Background:"

> Computer records indicate a Trust Fund Recovery Penalty was assessed against you as a responsible officer of Intermountain Laboratories on 02/08/1993. The original assessed amount was $86,038.95.
> Notice and demand were made.
> You either neglected or refused to pay the balance.

6

Rabinovici did not challenge the Determination.

On October 19, 2004, this action was commenced "to reduce to judgment an outstanding assessed federal Trust Fund Recovery Penalty liability" of Rabinovici. According to the complaint, "On February 8, 1993, . . . an assessment [was made] against Steven Rabinovici for Trust Fund Recovery Penalty ("TFRP") pursuant to § 6672 . . . as a responsible person who failed to withhold, to account for, and to pay over to the Internal Revenue Service the income and [FICA] taxes due from the employees of Intermountain Laboratories, Inc., in the amount of $86,038.95." (Compl. ¶ 3.) The Complaint further alleges that the balance due and owing is $198,325.42 as of September 27, 2004 and seeks judgment "with respect to [Rabinovici's] unpaid Trust Fund Recovery Penalty liability for the period ending December 31, 1991 in the amount of $198,325.42 plus statutory interest . . . ." [Compl. p.3.] Despite the allegation in its Complaint, the Government disputes that "an assessment was made on February 8, 1993 in the amount of $86,038.95." Rather, as described above, the Government contends that the amount of the February 8, 1993 TFRP assessment was $1,567,162.07, of which $1,481,123.12 was later abated leaving a net unabated balance of $86,038.95. [Plaintiff's Response to Defendants' Rule 56.1 Statement ¶ 1.]

*DISCUSSION*

*I. Applicable Legal Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d

712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective

8

parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587.

## *II. The Statute of Limitations*

Section 6203 of the Code provides the method of assessment: "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. The applicable regulation provides as follows: "The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, *if applicable*, and the amount of the assessment." 26 C.F.R. 301.6203-1 (emphasis added).

Section 6502(a)(1) of the Code, entitled Collection After Assessment, provides a 10 year statute of limitations in which to bring an action on an assessment. It provides:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun -
> (1) within 10 years after the assessment of the tax . . . .

26 U.S.C. § 6502(a)(1).

When the IRS decides to proceed with a levy, the Code provides that the taxpayer be given a notice of intent to levy and an opportunity to challenge the levy. The notice is required "only once for the taxable period to which the unpaid tax specified . . . relates." 26 U.S.C. § 6330(a)(1). The IRS notice is to be sent to the taxpayer not less than 30 days before the day of the first levy and must advise the taxpayer, "in simple and nontechnical terms" of 1) the amount of the unpaid tax; 2) the right to request a hearing (referred to as a collection due process hearing) during the 30 day advance notice period; and 3) the proposed action and the rights of the taxpayer with respect to such action. *Id.* at § 6330(a)(3).

If a collection due process hearing is requested, the period of limitations on the collection of the assessed tax that is the subject of the levy is suspended. Section 6330(e)(1) provides in pertinent part:

> If a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment) . . . shall be suspended for the period during which hearing, and appeals therein, are pending.

26 U.S.C. § 6330(e).

In this case, the Government contends that the statute of limitations was suspended from February 27, 2001, when the IRS received the Defendant's due process request, to November 9, 2002, the date that the October 10, 2002 Notice of Determination became final. There appears to be no dispute that if there was such a suspension, this action is timely.

Defendant contends, however, that there is no suspension because of the Government's failure to identify the correct tax period – 1989 – in the Levy Notice. According to Defendant, "[s]ince the Levy Notice identified only a December 1991 tax period, only collection action with

10

respect to a December 1991 tax liability could have been suspended by the request for a collection due process hearing. Thus, the period during which the Request was under review cannot be excluded in calculating the ten year period in which to bring this action, which is based solely on the December 1989 period." [Mem. In Supp. of Def. Motion for Summary Judgment at 8-9.]

The Government's response is that there is no "taxable period for a trust fund penalty as the penalty reflects the aggregate amount of trust fund taxes that were withheld and never paid over to the government" and as a "bookkeeping" matter, the IRS assigns a "nominal date-identifier" to the penalty which is "typically the last of the series of unpaid employment tax periods." Because the nominal date-identifier is merely a bookkeeping matter and because the abatement of the TFRP did not change the date-identifier, the Government asserts that the "fact that the assessed penalty carries a specific date-identifier should not, however, be interpreted as having any legal significance." [Mem. of U.S. in Opp. to Def. Motion for Summary Judgment at 6.] Therefore, the Government concludes, the statute of limitations was suspended as a result of Defendant's CDP Request and the action is timely.

Section 6330(a)(3) requires only the following information to be included in the notice before levy : "(A) the amount of the unpaid tax; (B) the right of the person to request a hearing . . . ; and (C) the proposed action by the Secretary and the rights of the person with respect to such action . . . ." Nothing in the statute itself requires that the notice specify the taxable period to which the unpaid tax relates. Given that the Government was not required to specify the tax period, it is not as Rabinovici argues "only collection action with respect to a *December 1991 tax*

11

*liability* [that] could have been suspended by the request for a collection due process hearing." Rather, it is a collection action with respect to the specified "amount of unpaid tax" that is suspended by the request for a collection due process hearing. Moreover, a responsible party assessment is not a tax liability imposed for a particular tax period. Rather, it is an aggregate sum penalty equal to the total amount of unpaid withholding taxes during any tax period in which an individual is a responsible party. *See* 26 U.S.C. § 6672; *Taylor v. IRS*, 69 F.3d 411, 418 (10th Cir. 1995) (upholding lump sum assessment of § 6672 penalty valid); *Cutair v. U.S.,* 1994 WL 249802, *3 (E.D. Pa. 1994) ("Since an individual taxpayer has no taxable period with respect to a penalty such as a section 6672 penalty, the notice to taxpayer need not include any time period at all.") (citing *Planned Investments Inc. v. U.S.*, 881 F.2d 340, 343 (6th Cir. 1989). *See also, Parker v. U.S.A.,* 139 F.3d 907 (9th Cir. 1998).

Given that a TFRP is an aggregate sum penalty, that an assessment need only specify the time period "if applicable," and that § 6330 does not require that the notice of intent to levy specify the taxable period, Defendant's request for a hearing suspended the statute of limitations pursuant to 26 U.S.C. § 6330(e).

Rabinovici points to the Treasury regulations and the sample questions and answers contained therein which state that the IRS will give notification for each tax and tax period it intends to include in a levy and that in requesting a CDP hearing the taxpayer must specify the tax and relevant tax period. 26 C.F.R. § 301.6330-1(a)(3) and § 301.6330-1(c)(2). However, those sample questions and answers also state:

> Q-A6. What must a pre-levy CDP Notice include?
> A-A7. Pursuant to section 6330(a)(3), a pre-levy CDP Notice must include in simple and nontechnical terms:

> (i) The amount of the unpaid tax.
> (ii) The notification of the right to request a CDP hearing.
> (iii) A statement that the IRS intends to levy
> (iv) The taxpayer's rights with respect to the levy action . . . .

26 C.F.R. § 301.6330-1(a)(3). Again, absent is the requirement that the taxable period be specified.

Rabinovici also relies on the Fifth Circuit's decision in *Stallard v. United States,* 12 F.3d 489 (5th Cir. 1994). In *Stallard*, the taxpayer paid a nominal sum on a § 6672 penalty assessment then brought an action for a refund to remove two federal tax liens based on this assessment. The District Court granted summary judgment for the taxpayer concluding that the IRS failed to assess the penalty within the applicable prescriptive period. On appeal, the Fifth Circuit affirmed, albeit on different grounds. The Fifth Circuit concluded that the IRS did assess the tax timely but it assessed the tax for the wrong tax period and because the time for an assessment based on the correct tax period had now run, the IRS could not correct its error. *Id.* at 490. In reaching that conclusion, the Court stated as follows:

> A taxpayer is liable for a penalty under § 6672 if, and only, if, that person is a "responsible party." That taxpayer is a responsible party if he was both 1) under a duty to collect and pay over the taxes, and 2) willfully failed to do so. But liability under § 6672 does not exits "in the air" - such liability is imposed only on those persons responsible for particular taxes of a particular entity. And we are satisfied that both logic and precedent mandate a temporal requirement for § 6672: such liability is imposed only on those who were responsible parties for particular tax periods. . . . To determine whether a person is liable because he has the power to pay those taxes without also considering whether he held that power in the particular tax periods in which the deficiency accrued would be nonsensical. Likewise, we have imposed a temporal requirement on the "willfulness" prong of § 6672. . . . [T]o speak of willfulness under §6672 without considering the tax

13

periods during which the person in question was "responsible" would be nonsensical. Requiring the assessment to refer to the correct taxable period is also necessary to preserve accuracy in assessments under § 6672. The instant case aptly illustrates this need, as the government admits that the "reference" period used here referred to the wrong taxes, owed by the wrong taxpayer, for the wrong tax period. . . .

      Finally, we emphasize the narrowness of our determination today. As the government correctly notes § 6672 liability applies to the total amount due; of course, the "total amount due" for a responsible party is predicated on accruals for each tax period in which that taxpayer is a responsible party. Nonetheless, an assessment based on the last period for which that taxpayer is a responsible party would be sufficient as that assessment would be for a particular tax period in which that taxpayer is liable, and that assessment would accurately reflect that an accrued amount is due for that period. A properly executed Form 4340 referring to the tax periods making up this accrued liability would, in such a case, invoke the "presumption of validity" as to that assessment . . . . Thus, our holding toady would not necessarily affect the typical case in which the government assesses a taxpayer for the last of several periods for which that taxpayer had § 6672 liability. In the instant case, though, Stallard was assessed for but one tax period, one for which he owed nothing. The predicate for that assessment – a reference to a tax period for which Stallard was liable – was missing.

*Id.* at 494 (footnotes omitted).

    *Stallard* is distinguishable from the case at bar. First, there is no indication on this motion of a tortured bureaucratic history like that in *Stallard*. *See id.* at 491-92. Second, unlike *Stallard*, there is no concession by the Government in this case that the assessment's "reference" period referred to the wrong taxes, owed by the wrong taxpayer, for the wrong tax period. Here, at the very least, there is a factual dispute as to whether there was one assessment, a portion of which was later abated, or whether there were two assessments, one for the tax quarter ending

December 1989 and one for the 1990 and 1991 tax quarters. The *Stallard* Court noted the narrowness of its decision and explicitly approved the practice that the Government says it followed here. Finally, the *Stallard* decision does not address the issue before this Court - whether the statute of limitations for the levy has been suspended.

The Court does not mean to imply that the date identifier contained in the notice is without any legal significance. As the *Stallard* Court stated: "liability under § 6672 does not exist 'in the air'" *Id.* at 494. It is possible that given the course of events in this case, the Government's use of the date identifier somehow misled this Defendant and, if there is the requisite showing of prejudice, should estop the Government from claiming the benefit of the suspension in § 6330. *Cf. Sanderling Inc. v. Comm'r, IRS,* 571 f.2d 174, 176 (3d Cir. 1978) (where taxpayer is not misled as to the proper year in question or the amount in controversy, an assessment should be valid despite clerical errors.) However, that is an issue for another day. Defendant only raises estoppel briefly in his Reply Memorandum and therefore the Government has not had an opportunity to address the issue. Also, it would appear that the disputed factual issue as to whether there was an original assessment on February 8, 1993 in the amount of $86,038.95 relating to the December 1989 tax liability and an additional assessment in the amount of $1,481,123.12 for the tax periods 1990 and 1991, as Defendant contends, or just one aggregate assessment that was later abated, as the Government contends, would appear central to the resolution of any estoppel argument. The other evidentiary gaps in the present record, *see supra* at pp. 3-4 & nn.2 & 3, also preclude summary judgment on the issue of estoppel.

## *CONCLUSION*

For the reasons set forth above, Defendant's motion for summary judgment is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
      March 23, 2007

                              /s/
                              Denis R. Hurley
                              Senior District Judge